# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN

**BEVERLY J. COX**                                                                                         **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 1:10CV-93-M**

**COMMONWEALTH OF KENTUCKY**                                               **DEFENDANTS**

## MEMORANDUM OPINION

Acting without the assistance of counsel, Beverly J. Cox, filed this civil action against the Commonwealth of Kentucky, the Kentucky Attorney General Jack Conway, and the Commissioner of the Kentucky Department of Corrections. Cox claims that Defendants have violated her rights by enacting and forcing her to comply with the Kentucky Sex Offender Registration Act (KSORA), codified at Ky. Rev. Stat. § 17.500 *et seq*. She maintains that the KSORA as applied to her amounts to an ex post facto law and that in requiring her to comply with it Defendants have violated her rights under the 6th, 8th and 14th Amendments to the United States Constitution as well as the Constitution of the Commonwealth of Kentucky.

Along with her complaint, Cox also filed an application to proceed without prepayment of the $350.00 filing fee. By Order entered June 8, 2010, the Court granted Cox's application and excused her from paying the filing fee. Under 28 U.S.C. § 1915(e), which governs *in forma pauperis* proceedings, the Court has a mandatory duty to screen initial filings. *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Specifically, a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A *pro se* complaint should be held to a "less stringent standard" than one drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even a *pro se* complaint, however, must plead facts sufficient to show a legal wrong has been committed for which the

plaintiff may be granted relief.

For the reasons that follow, the Court will dismiss Cox's federal law claims for failure to state a claim upon which relief may be granted and will dismiss her state law claims without prejudice as it declines to exercise supplemental jurisdiction over those claims.

**I.**

In 1986, Cox was convicted of kidnapping a minor child in violation of Ky. Rev. Stat. § 509.040. In her complaint, she states that "she did not harm the victim of the kidnapping offense, and her motives were solely for the purpose of having an infant child." She states that during her criminal prosecution, the Commonwealth conceded that "there was no evidence that she committed a sexual offense."

On September 13, 1994, while Cox was still serving her sentence on the kidnapping conviction, President Clinton signed into law the Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act, 42 U.S.C. § 14071. The goal of this statute was to encourage states to enact and enforce sex offender registration statutes. States that failed to implement a registry would be penalized by Congress withholding ten percent of the funds that they would ordinarily receive under 42 U.S.C. § 3765, the Omnibus Crime Control and Safe Streets Act of 1968; the forfeited money could then be reallocated to complying states. 42 U.S.C. § 14071(g)(2)(A). In 1996, the Jacob Wetterling Act was amended to include "Megan's Law," which required that states provide for community notification by releasing/making available certain information on the registry to the public. By 1996, every State, the District of Columbia, and the Federal Government had enacted some form of an

offender registry law.[1] *See Smith v. Doe*, 538 U.S. 84, 90 (2003).

In response to the Jacob Wetterling Act, the Kentucky General Assembly passed Kentucky's "Sex Offender Registration System Act" codified as Ky. Rev. Stat. § 17.500-.540. KSORA was largely modeled on the federal statutes. The 1996 version of KSORA applied only to those convicted after its effective date. In 1998, the General Assembly amended KSORA to provide for risk assessments for sex offenders. Those designated high risk were required to register for life, while others were required to register for ten years after their final discharge. The provisions were made applicable to persons individually sentenced or incarcerated after the effective date. In 2000, the General Assembly again amended KSORA. The 2000 amendments eliminated the need for a risk assessment, instead making the length of registration dependent on the nature of the underlying offense. The 2000 amendments stated that KSORA applied to any person, who after its effective date, was required to register by its terms. It required registration by anyone being released "by the court, the parole board, the cabinet, or any detention facility" who was eighteen years or older at the time of the offense if the offense was a sex crime or was an enumerated offense against a minor. A "criminal offense against a minor" was defined to include kidnapping in violation of Ky. Rev. Stat. § 509.040, the statute Cox was convicted of violating in 1986. The 2000 amendments also required lifetime registration for any person convicted of kidnapping, in violation of Ky. Rev. Stat. § 509.040, if the victim was under the age of eighteen at the time of the offense. They also increased the penalty for failure to register on the KSORA from

---

[1]On July 27, 2006, President Bush signed into law the Adam Walsh Act. Title I of the Act is referred to as the Sex Offender Registration and Notification Act (SORNA). SORNA greatly expanded the availability of state sex offender registry information and promoted exchange of that information by law enforcement officials. SORNA § 129 repealed the Jacob Wetterling Act, effective either on July 27, 2009, or one year after software described in § 123 of SORNA is available, whichever is later.

a Class A misdemeanor to a Class D felony.[2]

Cox was released after the effective date of the 2000 KSORA amendments. As such, as a result of her 1986 kidnapping conviction, she was required to register under KSORA and to keep up her registration for life. *See Peterson v. Shake*, 120 S.W.3d 707, 709 (2003) (holding that the 2000 amendments applied to anyone that did not secure release before April 11, 2000).

In this action, Cox argues that the 2000 amendments requiring her to register for life or face Class D felony charges constitute an ex post facto law, and therefore, that the enforcement of the amendments against her violates numerous state and federal constitutional provisions.[3] She also appears to be arguing that the statute is unconstitutional as applied to her because she was never charged with nor convicted of a sexually-based offense. She is asking this Court to: award her "ten million dollars as punitive and compensatory damages"; grant injunctive relief by suspending and removing her from the KSORA registry; and "enjoin future attempts by the legislature or agents thereof in attempting to circumvent the Order of this Court and/or from brining forth other laws to ensnare or entrap [her] . . . concerning her 1985 case."

---

[2]There have been subsequent amendments to KSORA, but those do not appear to be directly at issue in this case.

[3]Cox does not allege that she has ever been charged with violating KSORA's registration requirements.

**II.**

**A.    KSORA and the Ex Post Facto Clause as applied to Cox**

The United States Constitution prohibits states from passing ex post facto laws. U.S. Const. art. I, § 10.[4] "An ex post facto law is one which imposes a punishment for an act which was not punishable at the time it was committed, or a punishment in addition to that then prescribed." *Burgess v. Salmon*, 97 U.S. 381, 384 (1878). In 2003, the United States Supreme Court considered whether Alaska's sex offender registry statute violated the prohibition against ex post facto laws when the statute was retroactively applied to offenders who had been convicted before the statute's enactment.[5] *Smith v. Doe*, 538 U.S. 84 (2003). The Supreme Court explained that the first step in an ex post facto analysis is to determine whether the legislature intended the statute at issue to impose punishment. *Id.* at 92. If the answer to that inquiry is yes, the law cannot be retroactively applied without violating the Ex Post Facto Clause, and the examining court need not proceed any further. *Id.* "If, however, [the court finds that] the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention' to deem it civil." *Id.* (internal quotations omitted).

After conducting this analysis, the Supreme Court concluded that Alaska's sex offender registry statute was intended as a civil, non-punitive means of identifying previous offenders enacted for the protection of the public. *Id.* at 96. The Court further concluded that the effect of

---

[4]This section states: "No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

[5]Like the KSORA, Alaska's statute applied to both sex offenders and child kidnappers.

the Act was nonpunitive because "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Id.* at 101. As such, the Court held that Alaska's retroactive enforcement of the registration requirements did not violate the Ex Post Facto clause. *Id.* at 106.

With this framework in mind, the Court turns to the provisions of KSORA at issue in this case. There is no question that Kentucky retroactively applied KSORA to Cox. Thus, the Court must first inquire whether the General Assembly intended KSORA as a means to impose punishment. In *Hyatt v. Commonwealth*, 72 S.W.3d 566, 572 (2002), the Kentucky Supreme Court concluded that the General Assembly enacted both KSORA's 1998 and 2000 amendments for the purpose of "protecting the public" and *not* to "impose a separate punishment based on past crimes." *Id.* And, like the United States Supreme Court would hold a year later in *Smith,* the Kentucky Supreme Court concluded that "although registration might impose a burden on a convicted sex offender, registration is merely a remedial aspect of the sentence." *Id.* at 573.

The Kentucky Supreme Court's analysis in *Hyatt* is well-reasoned and logical. Furthermore, because KSORA is very similar to Alaska's statute analyzed by the United States Supreme Court, the outcome is mandated by *Smith.* Thus, this Court finds that application of KSORA's amendments in this case did not violate Cox's right to be free from ex post facto laws because KSORA is nonpunitive in both its purpose and effect.

**B.     KORA's increased penalty provisions**

Cox also appears to take issue with the fact she could be charged with a Class D felony under Kentucky's penal code if she fails to comply with KSORA's registration requirements.[6] Although not entirely clear, Cox seems to suggest that even if the registration portion of KSORA does not constitute an ex post facto law, the penalty provision does. She also implies that it is her understanding that the Kentucky Court of Appeals declared the penalty provision of the 2000 KSORA amendments unconstitutional.

Actually, the Kentucky Supreme Court, relying on United States Supreme Court precedent, recently upheld the validity of KSORA's 2000 penalty provision, even if the original conviction date was prior to 2000:

> In addition, Buck argues that the 2000 amendment, which increased failure to register (first offense) from a Class A misdemeanor to a Class D felony, constitutes ex post facto punishment when applied to him. We cannot agree. "Any potential punishment arising from the violation of [SORA] is totally prospective and is not punishment for past criminal behavior." *Hyatt*, 72 S.W.3d at 572. *See also Doe*, 538 U.S. at 101-02 ("A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."). While a sex offender's past conduct is the reason he or she is required to register, the failure to register occurs in the present. An increase in the degree of the offense for failing to register would only present an ex post facto issue if the act of failing to register occurred prior to the effective date of the amendment.

*Buck v. Commonwealth*, 308 S.W.3d 661, 667 (Ky. 2010).

This Court agrees with the reasoning and conclusion of the Kentucky Supreme Court in

---

[6]Cox has standing to challenge application of the penalty provision even though she has not been charged with a violation because under the statute "there exists a credible threat of prosecution thereunder." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) ("When contesting the constitutionality of a criminal statute, it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.").

*Buck.* The penalty provision as it would be applied to Cox would not run afoul of the Ex Post Facto clause because the provision criminalizes only future conduct, the failure to register, not past conduct.

**C.     The inclusion of non-sexually based offenses**

Finally, Cox appears to challenge her inclusion on the registry because her conviction, kidnapping, did not involve any sexual misconduct. As such, she argues that she is being labeled by the state as having committed a crime that the state has never charged her with, nor given her the opportunity to defend against. She asserts that this violates her due process rights. This issue has been considered by a number of state courts with differing outcomes.[7]

The Court has not been able to locate any cases from either Kentucky or the Sixth Circuit dealing with this precise issue. However, in *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007),

---

[7]*Compare State v. Smith*, 780 N.W.2d 90(Wis. 2010) ("We have outlined numerous conceivable, rational reasons why the legislature could have so chosen to include registration for Smith, who was convicted of false imprisonment of a minor, regardless of whether his crime was of a sexual nature. Smith fails to establish that any of these conceivable policy decisions are arbitrarily or irrationally applied to him."); *People v. Johnson*, 225 Ill. 2d 573 (Ill. 2007) (holding that legislature's inclusion of kidnapping of a minor, regardless of whether the conduct was sexually related, in Illinois sex offender registration statute was a reasonable one, and therefore, the act was not unconstitutional as applied to a defendant convicted of a kidnapping); *Marlett v. State,* 878 N.E.2d 860, 870 (Ind. Ct. App. 2007)*; People v. Cintron*, 827 N.Y.S.2d 445, 460 (N.Y. Sup. Ct. 2006) ("Treating kidnapping and unlawful imprisonment of a minor as sex offenses subject to registration and notification is rationally related to the legitimate governmental objectives underlying the adoption of JWA and SORA."); and *State v. Sakobie*, 165 N.C. App. 447, 452 (N.C. Ct. App. 2004), *with  ACLU of N.M. v. City of Albuquerque,* 139 N.M. 761, 772 (N.M. Ct. App. 2006) ("The registration requirements for the offenses of kidnaping and false imprisonment, without any indication of sexual motive, violate substantive due process."); *State v. Robinson*, 873 So. 2d 1205, 1217 (Fla. 2004) ("Where the State concedes that the crime contained no sexual element and the circumstances of the crime conclusively belie any sexual motive, the designation of the defendant as a sexual predator--which then invokes the attendant statutory requirements and prohibitions--based solely on his conviction for kidnapping a minor not his child violates the defendant's right to due process of law."); and *State v. Young,* 2003 Ohio App. LEXIS 2056 (Ohio Ct. App. May 2, 2003) (same).

8

the Sixth Circuit held that enforcement of Michigan's sex offender registry laws did not violate the plaintiffs' federal constitutional rights even though the registry included youthful offenders that had never been tried or convicted on their charges. Instead, the offenders had participated in a state diversion program. Much like Cox, the plaintiffs argued that their inclusion on the registry violated their constitutional rights because they had never been convicted of or had an opportunity to contest the charges. Relying on case law from other circuits, the Sixth Circuit held that the right to keep one's name off a sex offender registry list "is not a right deeply rooted in our Nation's History," and therefore, challenges to sex offender registry statutes are analyzed under the rational-basis standard of review.[8] *Id. at* 500. While the Sixth Circuit questioned the logic of including the youthful offenders on the registry, it found that Michigan's goal of protecting its citizenry from future sexually-based crimes was legitimate and bore some rational relationship to inclusion of the plaintiffs on the registry. Despite expressing that the outcome was "troubling," the Sixth Circuit concluded that the statute did not violate the plaintiff's substantive due process rights under the Constitution.[9] *Id.*

This result in *Doe* was largely dictated by the fact that only in "rare or exceptional" cases will a court declare a statute unconstitutional under rationale basis review. *Id.* This is because a

---

[8]The Sixth Circuit stated that the right being asserted encompassed "the right to be free from being labeled a convicted sex offender when, under the HYTA, the plaintiffs were never convicted of such an offense."

[9]The Sixth Circuit pointed out that there was no need to even consider the plaintiff's procedural due process arguments because that issue had been for foreclosed by the United States Supreme Court's decision in *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) (holding that states are not barred by principles of "procedural due process" from drawing classifications in sex offender lists, and that challenges based on inclusion on the registries must be analyzed in terms of substantive, not procedural, due process).

court must uphold a statute under this standard "if there is any reasonably conceivable state of facts that could provide a rational basis" for the statute. *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 806 (6th Cir. 2005). Based on *Doe*, this Court concludes that it must examine Cox's challenge using the rational-basis test.

The Court begins its analysis with the precise title of the statute at issue, "Registration system for adults who have committed sex crimes or crimes against minors -- Persons required to register -- Manner of registration -- Penalties -- Notifications of violations required." Ky. Rev. Stat. § 17.510. As the title clearly indicates, the statute is aimed at both sex crimes *and* crimes against minors. This provides support that the General Assembly's purpose for including kidnapping a minor in the list of offenses requiring registration was aimed at protecting children from crime in general, not just sexually-related crime. *See First Bank & Trust Co. v. Feuquay*, 405 F.2d 990, 993 (6th Cir. 1969) ("One method of determining legislative intent . . . [is] to inspect the titles of the legislative acts by which a statute has been enacted, reenacted or amended."). Thus, inclusion of those convicted of a kidnapping involving a minor is rationally related to the General Assembly's intent to protect children from crime.[10]

Furthermore, the Jacob Wetterling Act that precipitated Kentucky's adoption of the registry required all states to make kidnapping and unlawful imprisonment of a minor subject to registration requirements. The Court has examined the Jacob Wetterling Act's legislative history and has reached two conclusions: 1) the statute was aimed at protecting children from abduction as

---

[10]Additionally, even though the registry itself is often denoted by the Commonwealth as the "sex offender registry," the information available to the public correctly lists the exact crime Cox was found guilty of committing, kidnapping. It does not state that she was convicted of a sexually-based crime.

well as sexually-related crimes; and 2) Congress considered it important that the majority of kidnapping victims are also sexually assaulted. *See* Jacob Wetterling Crimes Against Children Registration Act, Committee on the Judiciary, H.R. REP. NO. 103-392 (1993) ("Each year, the Department of Justice estimates there are approximately 114,000 non-family attempted child abductions . . . Two-thirds of the cases of non-family child abduction reported to police involve sexual assault . . . The Committee believes that protection of children from violence and sex offenses falls clearly within the Federal governments purview in protecting the health, safety and welfare of its citizens."); Jacob Wetterling Crimes Against Children Registration Act, 139 CON. REC. H. 10319 (1993) (statement of Rep. Sensenbrenner) ("The reason this bill is so important is because of the high rate of recidivism in persons who have committed crimes against children, and it is not just sex crimes against children but all crimes against children. The recidivism rate is probably higher in this area of our criminal justice system or in violations of the criminal code."); Personal Remarks, 140 CON. REC. H. 8968 (1994) (statement of Rep. Ramstad) ("We also need the Jacob Wetterling Child Protection bill, which I wrote. The children of America and their families need the Wetterling bill to protect them from child abductors and molesters, and cops want it as a resource for investigating child abduction and molestation cases.").

"If Congress had a reasonable basis for requiring child abductors to register, it necessarily follows that legislation intended to bring [the state] into compliance with the Jacob Wetterling Act shares that basis." *People v. Knox*, 903 N.E.2d 1149 (N.Y. 2009) (rejecting argument that defendants' inclusion in New York sex offender registry lists violated due process even though it was undisputed that the kidnapping he was charged with was not sexually related). This Court concludes that inclusion of kidnapping even where not sexually-motivated is rationally related to the Kentucky General Assembly's stated purpose of protecting minors from crime and potential

sexual assaults. As such, this Court concludes that the Commonwealth has not violated Cox's substantive due process rights by forcing her to register under KSORA based on her kidnapping conviction.

**D.    Sixth and Eighth Amendment challenges**

Cox briefly mentions in her complaint that she believes enforcement of KSORA against her also violates the Sixth and Eighth Amendments.

The Sixth Amendment provides that the accused in a criminal prosecution is entitled to defend the charges against her in a jury trial with counsel to assist her. Because KSORA is not a "criminal prosecution" it does not implicate the Sixth Amendment. *See Ivy v. United States*, No. 5:08-CR-00021-TBR, 2010 U.S. Dist. LEXIS 28933 (W.D. Ky. Mar. 25, 2010) (surveying applicable case law and holding that because SORA was a nonpunitive regulatory enactment registration did not give rise the Sixth Amendment right to a jury trial).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. As explained above, KSORA is nonpunitive. Since KSORA is not considered a form punishment, Cox cannot maintain an Eighth Amendment claim predicated on its enforcement. *Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999) ("We have already concluded that the Act does not impose punishment; it is regulatory in nature. Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.").

## III.

The Court finds that Cox has failed to state a claim under the United States Constitution. As such, the Court declines to exercise supplemental jurisdiction over her state law claims. *See* 28 U.S.C. § 1367(c). Those claims will be dismissed without prejudice. The Court will enter a separate Order that is consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*
4414.008